STATE OF NEW JERSEY, DEPARTMENT OF INSTITUTIONS
AND AGENCIES, PLAINTIFF, v. COUNTY OF MERCER
AND COUNTY OF MONMOUTH, DEFENDANTS.

Mercer County Court
Law Division

Decided April 29, 1952.

Mr. *Theodore D. Parsons,* Attorney-General (*Mr. Eugene T. Urbaniak,* Deputy Attorney-General, appearing), attorney for plaintiff.

Mr. *Joseph S. Bash,* County Solicitor (*Mr. David Kelsey,* Legal Assistant, appearing), attorney for defendant County of Mercer.

Mr. *Howard W. Roberts,* County Counsel (*Mr. Richard O. Venino,* appearing), attorney for defendant County of Monmouth.

HUTCHINSON, J. C. C. This matter is before the court upon motions by each of the defendants to dismiss the complaint as to each, which motions were directed to be made by the pretrial order. The motions were argued orally and briefs were submitted for each defendant. At the time of the oral argument it was pointed out by the court that the complaint as then framed sought a declaratory judgment only. Thereafter with the consent of counsel for each defendant an amended complaint was filed by the plaintiff claiming money damages against both defendants or against either of them. Counsel for each defendant agreed that the answers already filed by them were sufficient as to the amended complaint.

The facts as disclosed by the complaint and answers of the defendants are not in dispute. On June 27, 1938, Jacob B. Harad, father of Sandra Harad, then six years of age, applied to the judge of the former Court of Common Pleas of Mercer County for the commitment of his daughter to the Vineland State School at Vineland, New Jersey, as a mentally deficient person. Upon this application inquiry was had before the judge of that court and, as a result thereof, a final order dated July 14, 1938, was made determining that the child Sandra was a feeble-minded indigent person and that she

had a legal settlement in Mercer County and that she be committed to the Vineland State School at Vineland. In the order of commitment it was provided that the child Sandra should be supported and maintained at the school at the expense of the County of Mercer.

Because of lack of facilities at the school, the child Sandra was not physically admitted and was never physically admitted to any state institution until on or about March 25, 1949, on which date the order made some 11 years prior was carried into effect and the child Sandra was transferred under the provisions of *R. S.* 30:4–83 by the Commissioner of Institutions and Agencies from the custody of the chief executive officer of the Vineland State School to the custody of the chief executive officer of the North Jersey Training School at Totowa.

Meanwhile, and during the 11-year period from 1938 to 1949 the parents of the child Sandra removed from the County of Mercer and took up residence in the County of Monmouth in 1939, where the child remained with her parents until the date of her entry into the North Jersey Training School at Totowa on or about March 25, 1949. Thus, the parents lost their settlement in the County of Mercer in 1939 and by March 25, 1949, had acquired a legal settlement in the County of Monmouth. The indigence of the child and her parents has continued from 1938 down to the present time.

On the stated facts each of the defendants has moved this court to dismiss the complaint as to each respectively, the County of Mercer contending that the child Sandra's settlement followed that of her parents into the County of Monmouth upon their removal there in 1939, and the County of Monmouth contending that her legal settlement was fixed by the order of commitment of July 14, 1938, as in the County of Mercer. Each of the defendants contends that the other should pay to the State the one-half of the *per capita* cost of maintaining the said child Sandra in the North Jersey Training School at Totowa from March 25, 1949, until December 31, 1951, as claimed by the plaintiff.

Briefly then, the contentions of the respective defendants are as follows: the County of Mercer insists that the child Sandra had a legal settlement in the County of Monmouth within the meaning of *R. S.* 30:4–49 because of her physical presence with her parents, who had acquired a legal settlement there at the time of the making of the transfer order on March 25, 1949. The County of Monmouth denies this and contends that the child Sandra's legal settlement in the County of Mercer at the time of the order of commitment of July 14, 1938, had never changed within the meaning of *R. S.* 30:4–49 and that in any event the provisions of *R. S.* 30:4–87 are controlling.

This child had no settlement in her own right but rather a derivative settlement arising from the settlement of her father.

Legal settlement in a county is defined by *R. S.* 30:4–49 in the following language:

"Legal settlement in a county within the meaning of this article shall be continuous residence in such county for a period of not less than five years immediately preceding the date of application for commitment, * * *."

*R. S.* 30:4–50 provides for the continuance of settlement as follows:

"A patient who shall have acquired a legal settlement in any county shall retain his settlement until he shall have acquired a legal settlement in some other county; * * *."

*R. S.* 30:4–87 provides as to the settlement of persons transferred from one institution to another as follows:

"Determination by the original order for commitment as to settlement, indigency or rate of payment shall apply to and govern upon the transfer of a patient or inmate. * * *."

There would seem to be no question that the provisions of *R. S.* 30:4–49 are controlling. The child's legal settlement followed that of her father, who was on the date of the application for commitment legally settled in the County of Mercer. By the order of commitment this child was legally

in the custody of the chief executive officer of the Vineland State School and subject to the power of the Commissioner of Institutions and Agencies to transfer her to some other institution as provided by *R. S.* 30:4–83. The mere physical presence of the child with her father for five years immediately preceding her transfer by the commissioner to the custody of the chief executive officer of the North Jersey Training School at Totowa cannot affect the settlement determined by the original order of commitment made upon the application date June 27, 1938. The child's settlement was fixed by the final order of commitment as in the County of Mercer on the date of the application for commitment.

The County of Mercer urges the provisions of *R. S.* 30:4–68 which provides that "In all cases where an indigent patient is found to have a legal settlement in any county in this state, the cost of his care and maintenance shall be borne by such county from the beginning of his confinement, * * *." This section, however, presupposes a finding of a legal settlement as of the date of the application for commitment under *R. S.* 30:4–49 and, of course, simply means that the cost of care and maintenance shall begin upon the date of actual confinement.

The County of Mercer also contends in substance that *R. S.* 30:4–70, 71, 73, 74 are to the effect that a county's liability for maintenance of an indigent, feeble-minded person may be changed from time to time, according to the change of legal settlement and the other circumstances of the patient, and that upon proper application a county may have the obligation for care and maintenance of such person changed from one county to another. There is no suggestion that the County of Mercer made any such application.

The motion by the defendant County of Monmouth for a dismissal of the complaint as to it is therefore granted, and the motion by the County of Mercer for similar relief is denied.

The court will entertain a motion for summary judgment by the plaintiff against the County of Mercer.